IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
JOSEPH TOMADA,                    )
                                  )   2:10-cv-00856-GEB-DAD
              Plaintiff,          )
                                  )
     v.                           )   ORDER DENYING DEFENDANT'S
                                  )   MOTION TO DISMISS
SANDRA SPAGNOLI, DOES 1-20,       )
inclusive,                        )
                                  )
              Defendants.         )
_____ )
```

Defendant Sandra Spagnoli ("Defendant") moves for dismissal of Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), arguing Plaintiff has failed to allege sufficient facts to state viable claims, and in the alternative, defendants are entitled to qualified immunity. For the reasons stated below, the motion is DENIED.

**I. LEGAL STANDARD**

A Rule 12(b)(6) dismissal motion tests the legal sufficiency of the claims alleged in the complaint. Novarro v. Black, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which relief rests . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

1

Dismissal of a claim under Rule 12(b)(6) is appropriate only where the complaint either 1) lacks a cognizable legal theory, or 2) lacks factual allegations sufficient to support a cognizable legal theory. Balistreri v. Pacific Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). To avoid dismissal, the plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547.

In deciding a Rule 12(b)(6) motion, the material allegations of the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. See al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009). However, neither conclusory statements nor legal conclusions are entitled to a presumption of truth. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Twombly, 550 U.S. at 555. "In sum, for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

## II. BACKGROUND

Plaintiff alleges several as yet unidentified City of Benicia police officers violated his right to substantive due process when they failed to protect him from being attacked by intoxicated assailants. Plaintiff alleges in his Amended Complaint that he was "enjoying an evening out with family and friends" in Benicia, California, and "was accosted" by a number of intoxicated patrons as he was leaving a nightclub. (Am. Compl. ¶ 6.)

Plaintiff alleges that he "sought, and received, assistance from" City of Benicia police officers. (Id., ¶ 7.) Plaintiff alleges as the officers intervened, they learned "that one of the drunk patrons was

2

illegally carrying a concealed knife" and that "the drunk patrons intended to use the illegal knife on plaintiff." (Id., ¶¶ 8-9.) Plaintiff further alleges the officers "resolved the situation by telling plaintiff and the drunk patrons to 'walk away' in different directions," which required Plaintiff "to walk down a dark, desolate street at nighttime." (Id., ¶¶ 11-12.) Plaintiff alleges that he protested, telling the officers "he would be safer if he just went back inside the club or waited in a lit area for someone to pick him up," but the officers "unequivocally told [him] to walk away." (Id., ¶ 13.) Plaintiff alleges after the officers left the scene, "the drunk, knife-wielding patrons found [him] as he was walking down the... street, chased him down and attacked him with a knife. As a result, plaintiff permanently lost his vision and was confined to a bed for almost a year." (Id., ¶ 16.)

### III. DISCUSSION

Plaintiff alleges two federal claims under 42 U.S.C. § 1983 ("§ 1983") in his Amended Complaint. Plaintiff alleges in his first claim that unidentified City of Benicia police officers violated his "Fourth Amendment" right by failing to protect him from being battered by a drunk nightclub patron. Although Plaintiff states his first claim is made under the Fourth Amendment, the wording of the allegations in this claim, i.e. "defendant officers caused plaintiff to be subjected to a deprivation of liberty and/or property interest," and Plaintiff's arguments in his opposition to the dismissal motion show this claim is a Fourteenth Amendment substantive due process claim. (Am. Compl. ¶ 24, and Pl. Mem. of P.&A. in Opp'n to Def.'s Mot. to Dismiss ("Opp'n") 2:12-13.)

1 Plaintiff's second claim is alleged against Defendant Spagnoli
2 and Doe defendants for "deficient policies, practices, procedures, and
3 other protocols regarding the training of officers." (Am. Compl. ¶¶ 27-
4 32.) The second claim incorporates the allegations in the first claim
5 and is based upon Plaintiff's allegation that his injuries were the
6 result of the City of Benicia's inadequate training "in regard to
7 responding to situations like the one alleged [in his complaint]." (Id.,
8 ¶ 28.) Plaintiff alleges Defendant Spagnoli is the City of Benicia's
9 Chief of Police and is "responsible for all policies, instruction,
10 training and other protocol..." in the employing, training and
11 supervising City of Benicia Police Officers. (Id., ¶¶ 4, 17.)

    **A.   Substantive Due Process Claim Against Doe Police Officers**

13 Defendant has not shown she has standing to seek dismissal of
14 Plaintiff's first claim since she is not named as a defendant in this
15 claim. Therefore, Defendant's motion to dismiss Plaintiff's first claim
16 is denied. See <u>Newson v. Countrywide Home Loans, Inc.</u>, No. C 09-5288
17 SBA, 2010 WL 2034769, at *3 (N.D. Cal. May 19, 2010) (denying dismissal
18 motion as to claim in which the moving party was not named as a
19 defendant).

    **B.   Failure to Train Claim Against Defendant and Does**

21 Defendant argues Plaintiff's "failure to train" claim should
22 be dismissed because Plaintiff has not alleged the deprivation of a
23 constitutional right, which is necessary to state a "<u>Monell</u> claim."
24 (Def.'s Mot. to Dismiss ("Mot.") 17:18-20.) Specifically, Defendant
25 argues the Due Process Clause generally does not require the government
26 to protect people from harm by third parties, and Plaintiff has "failed
27 to allege facts sufficient to demonstrate" that his alleged battery
28 falls within the two exceptions, which create a duty to protect, i.e.

1 the existence of a "special relationship" or that the police created or
2 exacerbated a dangerous situation. (Mot. 8:25-28, 9:9-15.) Defendant
3 further argues that "the [alleged] conduct of the defendant police
4 officers... does not rise to the level of 'deliberate indifference,' to
5 [Plaintiff's] constitutional rights," an element Defendant contends
6 Plaintiff is required to allege. (Mot. 18:9-11.)

7 Plaintiff rejoins that he has properly plead "that defendants
8 had a duty to act because they assumed a custodial relationship toward
9 the plaintiff *and* because they affirmatively placed plaintiff in a
10 position of danger." (Opp'n 4:7-9.)

### 1. The capacity in which Defendant Spagnoli is sued

12 Defendant's categorization of Plaintiff's second claim as a
13 "Monell cause of action," for "deficient policies, practices and
14 procedures regarding the training of officers," presumes she has been
15 sued in her official capacity. (Mot. 16:11-14, 17:2-4.) However, a
16 failure to train claim can also be alleged against a supervisory
17 defendant in her individual capacity. See Corales v. Bennett, 567 F.3d
18 554, 570 (9th Cir. 2009) (citing Menotti v. City of Seattle, 409 F.3d
19 1113, 1149 (9th Cir. 2005)). Since the Amended Complaint is silent
20 concerning the capacity in which Plaintiff is suing Defendant, it is
21 construed liberally to allege that Defendant is named in both her
22 official and individual capacities. See Shaughnessy v. Hawaii, No. 09-
23 00569 JMS/BMK, 2010 WL 2573355, at *3 (D. Hawai'i June 24, 2010);
24 Sierzega v. Ashcroft, 440 F.Supp.2d 1198, 1208 (D. Or. 2006).

### 2. Underlying Deprivation of a Constitutional Right

26 To state a "failure to train" claim against an official in
27 either his or her individual or official capacity, Plaintiff must allege
28 the underlying deprivation of a constitutional right. Merritt v. County

1  of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989) (discussing the
2  elements of a "failure to train" claim against a municipality); Menotti
3  v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005) (stating a
4  supervisory defendant must have either "taken part in the alleged
5  constitutional violations or caused the constitutional violations"
6  through their individual actions to be exposed to liability in her
7  individual capacity).

Here, Plaintiff alleges the City's inadequate training of its police officers resulted in a violation of his substantive due process right, i.e. his assault by intoxicated third parties. (Am. Compl. ¶ 24; Opp'n 2:12-13.) The Fourteenth Amendment "Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney v. Winnebago County Dept. Of Social Services, 489 U.S. 189, 196 (1989). There are two exceptions to this general rule: 1) the "special relationship" exception and 2) the "danger creation" exception. Estate of Amos v. City of Page, Arizona, 257 F.3d 1086, 1090-91 (9th Cir. 2001).

### i. Special Relationship Exception

The "special relationship" exception is applicable when the government enters into a "custodial" relationship with a party, such as taking the party into custody or placing him or her into involuntary hospitalization. Huffman v. County of Los Angeles, 147 F.3d 1054, 1058-59 (9th Cir. 1998).

Plaintiff argues the following allegations are sufficient to allege a "special relationship:"

> [P]laintiff was not free to leave while police interceded in the situation. Therefore, plaintiff was in officers' custody from that point onward.

6

> Therefore, there existed a 'special relationship' between plaintiff and the officers at that point, for purposes of establishing the officers' duty to act under 42 U.S.C. section 1983.

(Am. Compl. ¶ 10.)

These conclusory allegations do not support the existence of a "special relationship" between him and the Doe police officers. Even if Plaintiff was "not free to leave" while the police responded to the situation, Plaintiff alleges he was injured "[a]fter defendant officers left the scene." (Id., ¶ 15.)

### ii.  Danger Creation Exception

The "danger creation" exception is applicable when "the [government] affirmatively places the plaintiff in a dangerous situation." Estate of Amos, 257 F.3d at 1091.  Consideration of the "danger creation" exception in context of law enforcement inaction focuses on "whether the officers left [plaintiff] in a situation that was more dangerous than the one in which they found him." Id.; see also Johnson v. City of Seattle, 474 F.3d 634, 639 (9th Cir. 2007) (summarizing Ninth Circuit cases that apply the "danger creation" exception); Munger v. City of Glasgow Police Dept., 227 F.3d 1082, 1087-88 (9th Cir. 2000) (applying the "danger creation" exception when police officers "ejected [plaintiff] from a bar late at night when the outside temperatures were subfreezing[, knew plaintiff] was wearing only a t-shirt and jeans, was intoxicated, was prevented by the officers from driving his truck or reentering [the bar], and was walking away from the nearby open establishments.")

Here, Plaintiff contends the following allegations are sufficient to allege a duty to protect under the "danger creation" exception:

> Officers resolved the situation by telling plaintiff and the drunk patrons to "walk away" in different directions. Officers' orders required plaintiff to walk down a dark, desolate street at nighttime, when an angry, drunk, knife-wielding assailant was looking for him. Plaintiff protested, and told the officers that he would be safer if he just went back inside the club or waited in a lit area for someone to pick him up. Officers unequivocally told plaintiff to walk away in the direction mentioned in the preceding paragraph. Officers' orders therefore placed plaintiff in a more dangerous situation in which they found him, thereby establishing a "danger exception" for purposes of establishing the officers' duty to act under 42 U.S.C. section 1983.

(Id., ¶¶ 11-14.)

Plaintiff's allegations sufficiently state circumstances to support the application of the "danger creation" exception. Plaintiff alleges he was "accosted" by "a number of drunk patrons" before the police responded, and that the police worsened his situation by ordering him "to walk down a dark, desolate street at nighttime" and preventing him from reentering the bar. (Id., ¶ 13.)

Defendant argues Plaintiff's above-described allegations are inconsistent with the allegation in his original Complaint that the "defendant officers instructed plaintiff to simply walk away." (Id., 15:11-23.) Therefore, Defendant contends Plaintiff's newly asserted facts "should not be permitted to... correct fatal pleading defects...." (Id., 15:24-25, 15:27-16:4.) However, Defendant has not shown that this argument justifies dismissal of this claim, in light of the applicable pleading standard.

### 3. Deliberate Indifference

Defendant further argues that Plaintiff's "conclusory allegation that the defendant police officers acted with deliberate indifference . . . is insufficient to show that an individual was

8

personally involved in the deprivation of [plaintiff's] civil rights." (Mot. 18:11-16.)

To state a § 1983 claim against a government official for injuries caused by a third party under the danger creation exception, "the plaintiff must show that the [government] official... acted with deliberate indifference to [a] known or obvious danger...." L.W. v. Grubbs, 92 F.3d 894, 900 (9th Cir. 1996). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." Kennedy v. City of Ridgefield, 439 F.3d 1055, 1064 (9th Cir. 2006).

Here, Plaintiff alleges the defendant Doe police officers acted with deliberate indifference by ordering him to walk down a "dark, desolate street at nighttime," knowing both that one of the drunk patrons "was illegally carrying a concealed knife," and that the patrons "intended to use the illegal knife on plaintiff." These allegations are sufficient to state that the Doe officers acted with deliberate indifference since they support that the officers disregarded a known consequence of their actions, i.e. "that plaintiff would be assaulted and battered by the knife-wielding, drunk patrons." (Am. Compl. ¶¶ 8-9, 12, 15.)

C. **Qualified Immunity**

Defendant argues in the alternative that "the defendants are entitled to qualified immunity from [Plaintiff's] claims...." because Plaintiff has failed to allege "any one of the officers deprived him of a constitutional right," or "that the conduct of any of the defendants was unreasonable in light of clearly established law." (Mot. 19:25-20:3.) Plaintiff counters that defendants are not entitled to qualified immunity because "it is both a constitutional violation, and indeed a

well-established one, to allow someone to be egregiously assaulted when there is a special relationship between the officer and the victim. (Opp'n 7:23-25.)

Defendant has not shown that she is entitled to qualified immunity at this stage in the proceedings. Although Defendant argues "the defendants are entitled to qualified immunity," Defendant has not shown how she has standing to raise this affirmative defense on behalf of the as yet unknown Doe defendants. Further, to the extent Defendant is sued in her official capacity, qualified immunity is not an available affirmative defense. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Moreover, Defendant has not shown she is entitled to qualified immunity in her individual capacity "on [the] non-existent factual record" in this case. Kwai Fun Wong v. U.S., 373 F.3d 952, 956-57 (9th Cir. 2004). Therefore, Defendant's qualified immunity dismissal motion is denied. See McReaken v. Schriro, No. CV 09-327-PHX-DGC, 2010 WL 1873104, at *4 (D. Ariz. May 5, 2010) (holding defendants not entitled to qualified immunity at motion-to-dismiss stage); and Anoushiravania v. Fishel, No. CV 04-212-MO, 2004 WL 1630240, at *10-11 (D.Or. July 19, 2004) (deferring decision on defendants' qualified immunity until summary judgment stage).

**IV. CONCLUSION**

For the stated reasons, Defendant's motion to dismiss is denied.

Dated: July 28, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge